UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PAULA DOVE JENNINGS; ADAM JENNINGS; and KEITH HUERTAS,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN M. PARE, in his representative capacity as Colonel of the RHODE ISLAND STATE POLICE; KENNETH BELL; KENNETH JONES; WILFRED HILL; JAMES DEMERS; KENNETH BUONIAUTO; STACI SHEPARD; and MICHELLE KERSHAW,<br><br>Defendants. | : | Case No. 03-572T |

**MEMORANDUM AND ORDER GRANTING KENNETH JONES'S MOTION FOR A NEW TRIAL**

Adam Jennings and other members of the Narragansett Indian Tribe (the "Tribe") brought this action against Kenneth Jones and a number of other Rhode Island State Troopers alleging that the defendants used excessive force while executing a search warrant at a "tax-free smoke shop" operated by the Tribe (the "smoke shop").

The complaint contains two remaining counts that assert claims against Jones. Count VIII asserts a claim under 18 U.S.C. § 1983 and Count XIV asserts a state law claim for battery. A jury found Jones liable to Jennings on both counts

based on Jones' use of an "ankle turn control technique" (the "ankle technique") to subdue Jennings when he was being arrested and the jury awarded Jennings damages in the amount of $ 301,100.

Following the verdict, this Court entered judgment as a matter of law ("JMOL") for Jones on the ground that he was entitled to qualified immunity, partly, because there was no clearly established constitutional prohibition against use of the ankle technique and, therefore, it was objectively reasonable for Jones to believe that he was acting lawfully. Jennings v. Pare, 2005 WL 2043945, at *5 (D.R.I. Aug. 24, 2005). This Court, then, made the mistake of declining to rule on Jones' alternative motions for a new trial or a remittitur on the ground that those motions were moot. Id. at *1.

By a two-to-one vote, a panel of the Court of Appeals vacated the JMOL in Jones' favor[1] and the case has been remanded for rulings on Jones' motions for a new trial and a remittitur. Jennings v. Jones, 499 F.3d 2, 21 (1st Cir. 2007).

---

[1]Two of the five judges who denied Jones' petition for a rehearing en banc expressed doubt "as to the panel majority's reasoning and results" in overturning the grant of qualified immunity. Jennings v. Jones, 499 F.3d 1 (1st Cir. 2007) (Boudin, C.J. and Lynch, J. concurring in the denial of rehearing en banc).

For reasons hereinafter stated, Jones' motion for a new trial is granted and his conditional motion for a remittitur is passed as moot.

## Background

The background facts and most of the applicable evidence presented at trial are set forth in Jennings v. Pare, 2005 WL 2043945, at *1-2 (D.R.I. Aug. 24, 2005). For present purposes, the relevant facts may be summarized as follows.

In July 2003, the Rhode Island State Police received information that the Tribe was operating a smoke shop in which it was selling cigarettes to the general public without collecting the tax imposed by Rhode Island law. State troopers obtained a State court search warrant authorizing them to enter the smoke shop and seize evidence of untaxed cigarette sales.

When troopers arrived to execute the warrant, Jennings was in the smoke shop and, because he was behaving in a disruptive manner, troopers undertook to arrest him. A videotape of the incident recorded Jennings shouting that he was "not getting arrested." The videotape also shows a struggle in which Jennings was taken to the floor kicking at the troopers and resisting their efforts to gain control of his hands in order to handcuff him.

Jones participated in the attempt to subdue Jennings by applying the ankle technique, which is taught at the State Police Training Academy as a method of preventing arrestees from engaging in assaultive behavior or resisting arrest. Unfortunately, surgery recently had been performed on Jennings' ankle and it was broken during the melee.

Jennings claims that, at the time his ankle was broken, he had stopped resisting and had been subdued but that Jones, nevertheless, increased the pressure that he was exerting on Jennings' ankle. Jones, on the other hand, claims that he maintained his grip on Jennings' ankle because Jennings continued to actively resist arrest but that he did not increase the pressure that he was exerting.

## <u>Standard of Review</u>

Fed. R. Civ. P 59(a)(1) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reasons for which a new trial has heretofore been granted in an action at law in federal court . . . ." New trials should be ordered sparingly and "only where the court is convinced that the jury's verdict was a 'seriously erroneous result.'" <u>Huber v. JLG Indus., Inc.</u>, 344 F.Supp.2d 769, 772 (D.Mass. 2003) (quoting <u>Coffran v. Hitchcock Clinic, Inc.</u>, 683 F.2d 5, 6 (1st Cir. 1982)). However, a court "has a

duty to set aside the verdict and grant a new trial if [it] is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice." Coffran, 683 F.2d at 6 (cited in Chrabaszcz v. Johnston School Committee, 474 F.Supp.2d 298, 311-12 (D.R.I. 2007)).

In deciding whether to grant a motion for a new trial "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998) (cited in Morris v. Flaig, 511 F.Supp.2d 282, 304 (E.D.N.Y. 2007). Consequently, "unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." Id.

In cases where the jury's verdict could have been based on any of several theories, a new trial should be granted if a verdict based on any one of those theories would not pass legal muster and it is impossible to determine whether, in fact, the verdict was based on that theory. Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 134 (1st Cir. 1997). That situation arises most often when, as in this case, the jury returns a general verdict because, usually, when multiple theories are presented there is no way to identify the theory or theories on which the verdict rests. See id. ("Where . . . a reviewing

court cannot identify which of the two claims - one proper and one improper - the jury relied upon to reach the general verdict, the usual rule is the verdict must be vacated.").

## Analysis

### I. The Basis for the Verdict

In this case, it appears that the Court of Appeals did not take issue with this Court's finding that qualified immunity prevented liability from being predicated simply on the fact that James used the ankle technique. Jennings v. Jones, 499 F.3d at 11-12. Rather, the Court of Appeals vacated the JMOL because, in its view, the evidence "would allow a reasonable jury to conclude that Jones increased the force he used to restrain Jennings after Jennings had already ceased resisting." Id. at 8 (emphasis in original).

Since there is no way to determine whether the jury based its verdict on the fact that Jones used the ankle technique or on a finding that Jones increased the force applied after Jennings had been subdued, Jones' motion for a new trial should be granted. As Judges Boudin and Lynch stated in concurring in the denial of Jones' motion for a rehearing en banc, "at this time a new trial, in which all issues can be assessed afresh, appears to us the best solution - taking account of the

unfortunate uncertainty about just what the jury decided . . . ." Jennings v. Jones, 499 F.3d at 1.

II. The Weight of the Evidence

Even if it were possible to say that the jury's verdict was based on a finding that Jones increased the force applied in utilizing the "ankle turn control technique" after Jennings had been subdued, Jones' motion for a new trial should be granted because, in this Court's opinion, such a finding would have been contrary to the clear weight of the credible evidence.

The evidence that Jones increased the force exerted on Jennings' ankle consisted of testimony by Domingo Monroe, Daniel Piccoli and Jennings, himself. However, neither Monroe nor Piccoli was in any position to observe Jones' actions or what was taking place during the struggle between Jennings and the troopers. The videotape shows a mass of bodies obscuring any view that Monroe or Piccoli could have had of what the participants in the struggle were doing, or, more specifically, what Jones was doing **to** Jennings' ankle. Monroe was seated across the room behind a counter and the videotape shows two officers standing directly in front of him as well as two other officers in between Monroe and where the struggle was taking place.

The videotape also shows that, just before the struggle began, Piccoli was in the middle of the parking lot; that Jones' back was toward the deck outside the door to the smoke shop where Piccoli claimed to be standing and that, from the deck, any view of what Jennings and/or Jones were doing would have been obstructed by the presence of a camera man and state troopers between the entrance to the smoke shop and the location of the struggle. Doubts regarding Piccoli's ability to have observed what happened are reinforced by his previous testimony before a commission investigating the incident that the struggle occurred <u>outside</u> the smoke shop.

Even if Jones and Piccoli had been able to observe Jones' hold on Jennings' ankle, it is difficult to see how they could have determined the degree of force that Jones was exerting and whether Jones was increasing the force or merely maintaining the hold. The only two people in a position to know that would have been Jones and Jennings.

As already noted, Jennings testified that he had ceased struggling but that Jones, nevertheless, increased the force being exerted on his ankle. In contrast, Jones testified that Jennings was continuing to resist and that, while he maintained his hold on Jennings' ankle, he did not increase the force being exerted. This Court finds Jones' testimony to be more credible

based on the demeanor of the two witnesses and for several additional reasons.

First, Jennings' credibility was undermined by his testimony, that in the events leading up to the struggle, he gripped the smoke shop counter because troopers instructed him to do so when the videotape plainly shows him gripping the counter in a clear effort to prevent troopers from escorting him to a seat while they conducted the search.

In addition, Jennings' testimony that he had stopped struggling when his ankle was broken was contradicted not only by Jones, but also by troopers James Demers, Wilfred Hill, and Kenneth Buoniauto who testified that, after being taken to the floor, Jennings continued to kick at them.

Jennings' testimony that he ceased resisting after being wrestled to the floor also is somewhat inconsistent with the combativeness he displayed in announcing that he was "not being arrested" and boasting, when he finally was escorted from the smoke shop, that: "It took ten of you to take me down."

In short, the weight of the credible evidence supports Jones' testimony that he maintained his hold on Jennings' ankle because Jennings continued to resist but that he did not increase the force being exerted.

**Conclusion**

For all of the foregoing reasons, Jones' motion for a new trial is hereby granted, and Jones' motion for remittitur is passed as moot. See Fey v. Walston & Co., Inc., 493 F.2d 1036, 1055 (7th Cir 1974) (stating that where a motion for a remittitur was "presented as an alternative to a new trial" it "would be moot should a new trial be granted"); see also Ericson v. City of Meriden, 205 F.R.D. 75, 81 (D.Conn. 2001) (denying a motion for remittitur as moot after granting judgment as a matter of law and conditionally granting a motion for a new trial).

IT IS SO ORDERED:

Ernest C Torres

Ernest C. Torres
Senior District Judge
Date: 5/27/08