**UNITED STATES DISTICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PAULA DOVE JENNINGS, et al.** **Plaintiffs** v. **KENNETH JONES,** **Defendant** | : : : : : : : | **C.A. No. 03-572ML** |

**MOTION IN LIMINE**

Now comes Defendant Kenneth Jones, and moves this Court to exclude or limit the evidence at trial pursuant to Fed. R. Evid. Rules 401, 402 and 403 in the following manner:

1) To limit the introduction of evidence to the incident involving Adam Jennings inside of the Smoke Shop building. No evidence concerning any of the events that occurred outside of the trailer, including Dan Piccoli's testimony about anything that allegedly happened to him, should be allowed.
2) To prohibit the testimony of Reginald Allard and Matthew Thomas, as set out in a previous Motion in Limine, Docket Entry No. 38. Allard's testimony lacks foundation and is irrelevant. Thomas' testimony would be irrelevant and unduly prejudicial.
3) To prohibit the playing of any videotape at trial in any manner other than real time, with no alterations or enhancements. Further, to limit the number of times any videotape can be played.
4) To prohibit mention or evidence of Adam Jennings' acquittal on criminal charges.

A memorandum in support hereof is attached.

Respectfully Submitted,

Defendant,
By His Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Rebecca Partington*

Rebecca Tedford Partington # 3890
Deputy Chief--Civil Division
John Moreira # 7371
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
Fax (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that I have filed the within Motion in Limine via the ECF System and that it is available for viewing and downloading and that I have caused a copy to be sent to the Attorney of Record listed below on this 1st day of July, 2008.

/s/ *Rebecca Partington*

**Charles M Bradley**
bradley39@earthlink.net

**UNITED STATES DISTICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PAULA DOVE JENNINGS, et al.**<br>**Plaintiffs**<br>**v.**<br><br>**KENNETH JONES,**<br>**Defendant** | :<br>:<br>:<br>:<br>:<br>:<br>: | **C.A. No. 03-572ML** |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE**

Defendant Jones requests that this Court enter orders setting the boundaries for the receipt of certain evidence, prior to trial. While acknowledging that the admissibility of evidence is usually determined during the trial, there are strong reasons why Jones' Motion in Limine should be granted. First, Jones seeks to have the evidence presented to the jury limited to the incident involving Adam Jennings – which occurred completely within the smoke shop building. Evidence that does not pertain to the incident inside the shop is irrelevant and should be excluded. The parties agreed to this during the first trial, and the evidence was (for the most part) limited.[1]

Second, Jones seeks to have witnesses Reginald Allard and Matthew Thomas excluded in their entirety. As grounds therefore, Jones would show that neither testified at the first trial, although both are on Plaintiff's witness list from 2005. Further reasons for exclusion of their testimony is found in Jones' Motion in Limine filed on February 4, 2005, docket entry no. 38 and will not be repeated here. That Motion was never argued

---

[1] One witness called by the Plaintiff, Dan Piccoli, was determined to testify concerning an altercation he had with members of the Rhode Island State Police on the deck at the entrance of the Smoke Shop. After sustaining several objections to questions that sought to allow Piccoli to tell his story, Piccoli managed to blurt out that he was "thrown down the stairs." Jones requests a pre-trial determination that such testimony is irrelevant and improper and will not be allowed. *See,* Transcript, March 22, 2005, pgs. 72-74, Exh. A.

or decided, since Jennings indicated before trial that he did not intend to call either as a trial witness. Jones relies on the arguments made in his 2005 Motion in support of this Motion.

Third, of critical importance is a pre-trial determination as to how and when the videotapes of the events of July 14, 2003 will be used at trial. There are two videotapes: the Rhode Island State Police Bureau of Criminal Identification video, and the interior security camera video. Jones does not object to use of the videotapes as evidence. However, the manner in which they are used and/or manipulated should be determined prior to trial.

The legal standard to which Trooper Jones is held is that of a reasonable officer presented with a similar scenario – a "totality of the circumstances" test. *Graham v. Connor,* 490 U.S. 386 (1989). The test is whether no reasonable officer, when faced with the same set of facts, would have acted as Jones did – from an on-scene perspective under the tense, rapidly evolving and uncertain circumstances existing at that moment. *Graham* at 396. No less an authority than the Supreme Court of the United States has held that courts and juries are not free to engage in Monday morning quarterbacking or 20/20 hindsight. *Saucier v. Katz,* 533 U.S. 194 (2001). "Excessive force claims…are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier* at 207. Therefore, only a real-time viewing of the video would be relevant.

Further, in every trial evidence that may otherwise be relevant but that nonetheless may be confusing or misleading should be excluded. Federal Rule of Evidence 403. Jones objects to either videotape being played for the jury in slow-motion,

or in any highlighted or altered version, since Jones was not confronted with a slow-motion or highlighted version of events on July 14, 2003, and since there is a question of authentication.[2]

There is little caselaw on the subject of enhanced videography being used as evidence in a civil trial. However, the court in *Miller v. Lewis,* 381 F.Supp.2d 773 (N.D. Ill. 2005) was confronted with a remarkably similar request, and determined that repeated and slow-motion replay of a videotape in an excessive force case was improper in granting summary judgment for the defendant officer, refusing to allow such manipulation of the videotape, that Court wrote:

> This is not to say that [the officer's] decision was indisputably correct or the most prudent step available. One can (as this Court has) run the operative seconds of the altercation in a video-recorder, unpacking the handful of seconds into twenty or thirty minutes on a frame-by-fame, slow motion basis, run back and forth multiple times. And after that exercise, one can reflect intermittently over the course of a couple days about whether pulling the weapon was the ideal course. And, after that reflection, one can have a fair debate with another viewer about whether pulling and pointing the weapon was the best option available. Reasonable people likely could respectfully disagree at the end of such a review and discussion.
>
> However, what is not subject to dispute is that this sort of armchair second guessing is specifically what precedent instructs courts *not* to do. As the Supreme Court taught in *Graham v. Connor:* 'With respect to a claim of excessive force, the...standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.'

381 F.Supp.2d at 786 (citation omitted).

---

[2] Plaintiff's counsel indicated that he would call a videographer used at a criminal trial recently concluded in Providence Superior Court as a witness in this trial. This witness has not been disclosed: discovery closed on October, 2004.

A slow motion version of the events of July 14, 2003 would not fairly and accurately depict the situation confronting Jones, would not be relevant or probative of any issue, and would only invite the speculation and hindsight deemed improper by the Supreme Court.

Moreover, a slow motion version of the events would only serve to confuse the issues and mislead the jury as to the nature of their inquiry. The court in *Miller v. Lewis* succinctly articulated the unfairly prejudicial and highly improper response to the slow-motion viewing of a sequence of events given the determination to be made by the fact finder – here the jury. The manipulation of the videotape will only serve to confuse the jury as to the nature of evaluation of the evidence that they will be instructed to make - under the split second circumstances as they unfolded in front of Trooper Jones. The manipulation of the videotape will only serve to confuse that inquiry. Regardless of any limiting instruction offered by the Court, the jury will have been implicitly invited to second guess the officers conduct on a frame-by-frame, slow motion basis that is prejudicial and should be prohibited.

The jury made a similar request in the first trial of this matter – they did not view the videotape using slow motion or stop action, albeit for different reasons. Judge Torres, after receiving a request from the jury to view the tape in slow motion and using stop action, told them that the Court did not have the technology to allow them to do so, but that they were allowed to view it in real time. (Transcript, Exh. B). This also begs the question – if the Plaintiff is offering to show the jury a slow-motion or altered/enhanced version of the videotape – can it be authenticated? That would require the testimony of a videographer, who has not been disclosed in discovery and certainly did not testify at the

prior trial. For all of these reasons, the playing of the videotape should be limited only to real time.

Secondly, for the same reasons articulated by the *Miller* court, the jury should be limited in the number of times it is shown the videotape. To view it over and over again only invites the speculation and hindsight prohibited by the Supreme Court. The risk that the videotape will be over-emphasized and given more weight than other evidence is great. As one decision put it, a court must "avoid a gratuitous multiplication of such depictions that might needlessly inflame the jury and skew its deliberations." *Dewick v. Maytag Corp.*, 324 F.Supp. 2d 889 (N.D. Ill. 2004).

In *State v. Brown,* 745 N.W. 2d 88 (Wis. App. 2007)(unpub. decision) that court found error in allowing the jury to take a tape into their deliberation room because of the risk of damage and overemphasis:

> A videotape, for example, can be paused or played in fast-forward or slow-motion. A jury can also rewind and replay all or specific portions of a videotape multiple times.

*Id., citing State v. Anderson,* 717 N.W.2d 74 (Wis. 2006).

Since videotape evidence has the potential for being "very powerful to the jury…even with a limiting instruction", *Guillory v. Domtar Indus.*, 95 F.3d 1320 (5th Cir. 1996) the court should limit the viewings. Further, because the testimony of what actually happened will be presented to the jury live, without the possibility of "rewind" the likelihood that the jury will overly emphasize the events shown on the videotape[3] is undeniable. Further, it would be error to give the videotape more emphasis than is warranted, since the jury will de-emphasize the testimony of those who actually

[3] The videotape does not show when Jennings' ankle was broken.

witnessed the event. Therefore, the manner and frequency of the viewings should be carefully controlled by the Court.

Finally, there should be no mention of Adam Jennings' acquittal on criminal charges. There is obviously a difference in the level of proof in criminal and civil cases. Since such evidence would not be probative of any issue in this case, and would only serve to confuse, mislead and/or inflame the jury, it should not be allowed. *See Dowling v. United States*, 493 U.S. 342, 348 (1990)(noting that a prior acquittal does not determine the ultimate issue in a later civil case); *Stagecrafters' Club v. District of Columbia Div. Of Am. Legion*, 111 F.Supp. 127 (D.C.D.C. 1953)(noting the difference in degrees of proof in criminal and civil proceedings); *Manning v. Tefft*, 839 F.Supp. 126 (D.R.I. 1994)(same).

For the foregoing reasons, Defendant Jones requests that his Motion in Limine be granted.

Respectfully Submitted,

Defendants,
By Their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Rebecca Partington*

Rebecca Tedford Partington # 3890
Deputy Chief--Civil Division
John Moreira # 7371
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
Fax (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that I have filed the within Memorandum in Support of Motion in Limine via the ECF System and that it is available for viewing and downloading and that I have caused a copy to be sent to the Attorney of Record listed below on this 1st day of July, 2008.

/s/ *Rebecca Partington*

**Charles M Bradley**
bradley39@earthlink.net

MS. PARTINGTON: Can we play it from this point on, please.

(State Police Videotape Shown)

MS. PARTINGTON: Your Honor, I have nothing further.

THE COURT: Mr. Bradley?

**REDIRECT EXAMINATION**

**BY MR. BRADLEY:**

Q. Mr. Piccoli, on July 14, 2003, what, if anything, happened to you that disturbed you -- withdrawn.

MS. PARTINGTON: Objection.

Q. What, if anything, happened to you that might have been emotionally upsetting?

MS. PARTINGTON: Objection, your Honor.

THE COURT: Sustained.

Q. Mr. Piccoli, on July 14, 2003, what, if anything, happened to you as it would relate to being thrown down the stairs?

MS. PARTINGTON: Objection, your Honor.

THE COURT: Sustained.

Q. Mr. Piccoli, did anything happen to you on July 14 --

MS. PARTINGTON: Objection, your Honor.

THE COURT: He hasn't finished the question yet --

MS. PARTINGTON: Excuse me.

THE COURT: -- and I'm hoping it is not just a restatement of the questions to which I previously sustained objections, but go ahead.

Q. Mr. Piccoli, what, if anything, that occurred to you on July 14, 2003, could affect your recollection of events on that date?

MS. PARTINGTON: Objection, your Honor.

THE COURT: Sustained.

Q. Mr. Piccoli, with respect to the videotape that you just saw where you are in the parking lot, do you recall seeing that?

A. Yes.

MR. BRADLEY: Could I have the videotape -- have it rewound?

THE COURT: Do you mean Exhibit BB you're talking about?

MR. BRADLEY: Yes, could I have that played, please.

THE COURT: While everyone is searching for that, I have a couple of questions, Mr. Piccoli.

Do you remember the clip that you just saw that Ms. Partington was asking you about and asked you to identify where you were in the picture?

THE WITNESS: Where I pointed?

THE COURT: Yes. Do you know when in relation to the events that you say you witnessed in the Smoke Shop, when that picture was taken, when that video was taken?

THE WITNESS: That was after I got thrown down the stairs.

MS. PARTINGTON: Objection, your Honor, please. Motion to strike.

THE COURT: Was it before or after what you say you saw in the Smoke Shop?

THE WITNESS: That was after.

THE COURT: That was after.

THE WITNESS: What you just told me to point to?

THE COURT: Yes. The portion of the videotape that you just saw showing you in the parking lot, you identified yourself in the parking lot?

THE WITNESS: Yes.

THE COURT: When in relation to the things that you say you observed in the Smoke Shop was that taken? Was that showing you before or after the incident in the Smoke Shop?

THE WITNESS: I believe it was after.

THE COURT: Do you know how long after it would have been?

THE WITNESS: No.

There are six video exhibits in evidence, they are as follows: Plaintiff's Exhibit 15 is a one minute and ten second State Police video. Plaintiff's Exhibit 11 is a 23-minute video taken by the Smoke Shop's security camera. Defendant's Exhibit A is a DVD version of Plaintiff's Exhibit 15. Defendant's Exhibit B is a DVD version of Plaintiff's Exhibit 11. Defendants' Exhibit BB consists of two separate clips regarding events taking place outside of the Smoke Shop, which runs for approximately two minutes, and Defendant's Exhibit CC is a three- or four-minute video of Mr. Piccoli's testimony before the Brown Commission.

We cannot make available to you the equipment that would enable you to replay these videos in the jury room, but we would be happy to replay for you in the courtroom any of the videos that you wish.

If you wish, we can replay any of those videos more than once, but logistically it would be very difficult to stop them at any particular point.

Please let me know what you would like us to do.

Ernest C Torres

CHIEF JUDGE, ERNEST C. TORRES