**UNITED STATES DISTICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ADAM JENNINGS** | : | |
| **Plaintiff** | : | **C.A. No. 03-572ML** |
| **v.** | : | |
| | : | |
| | : | |
| **KENNETH JONES,** | : | |
| **Defendant** | : | |

**<u>MOTION TO QUASH</u>**

Now come Elwood Johnson, Darren Delaney, James Demers, Kenneth Bell, Michelle Kershaw, Kenneth Buonaiuto, Donald Devine, Stacy Shepard and Wilfred Hill, and move to quash the subpoenae served upon them on July 7, 2008. A memorandum in support hereof is attached.

Respectfully Submitted,

Defendant,
By His Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Rebecca Partington*

Rebecca Tedford Partington # 3890
Deputy Chief--Civil Division
John Moreira # 7371
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
Fax (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that I have filed the within Motion to Quash via the ECF System and that it is available for viewing and downloading and that I have caused a copy to be sent to the Attorney of Record listed below on this 10th day of July, 2008.

/s/ *Rebecca Partington*

______________________________

**Charles M Bradley**
bradley39@earthlink.net

**UNITED STATES DISTICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ADAM JENNINGS** | : | |
| **Plaintiff** | : | **C.A. No. 03-572ML** |
| **v.** | : | |
| | : | |
| | : | |
| **KENNETH JONES,** | : | |
| **Defendant** | : | |

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**

The movants request that the subpoena, as served upon them, be quashed, for the following reasons:

1. James Demers will be out of State on a family vacation during the week of July 22, 2008. The vacation has been planed for several months and he will be quite a substantial distance from the jurisdiction. (Affidavit, Exh. A). Demers testified at the prior trial in this matter and Defendant Jones has designated that testimony to be read into the record of this trial. Since the plaintiff cross-examined Det. Demers at the prior trial, he will not be prejudiced. Therefore, it is respectfully requested that Det. Demers' appearance be excused to avoid undue burden or hardship on him.

2. As to all of the subpoenae, they require all eight individuals to appear to 9:30 a.m. on July 22, 2008.[1] Since it is physically impossible for all nine individuals to be on the stand on the same date and time, the request would cause unnecessary hardship and staffing issues within the Rhode Island State Police, and would waste the time of those witnesses who were not called to testify on July 22nd. Counsel seeks to work out a more realistic schedule, but has been unable to. (See correspondence, Exh. B).

---

[1] Darren Delaney was planning to request to be taken out of order and testify that Tuesday morning, so he does not join in this section of the Motion.

3. As to Delaney and Johnson, the subpoenae seek to have them bring myriad documents. The documents required of Delaney were never sought in discovery, and the breadth of what is sought from Johnson is unclear. All reports concerning the Jennings arrest that were prepared in the ordinary course of business by the troopers who witnessed the event have been produced in discovery. Further, the subpoena does not comply with the time periods contained in the rules of civil procedure. See F.R.C.P 45(C)(2)(B).

4. Elwood Johnson's testimony has no relevance to this case. He was offered at the first trial of this matter only after two lengthy discussions, spanning two sessions of Court. (Tr. March 22, 2005, pgs. 149-157; March 23, 2005 pgs. 4-9, Exh. C). His testimony, as elicited ***by the Plaintiff***, was that he received two use of force reports from Trooper Jones and that he was satisfied with the contents of those reports. (Tr. March 23, 2005, pgs. 27-31, Exh. C.) That can and should be stipulated to.

For the foregoing reasons, the movants pray that the subpoenae be quashed.

Respectfully Submitted,

Defendants,
By Their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Rebecca Partington*

Rebecca Tedford Partington # 3890
Deputy Chief--Civil Division
John Moreira # 7371
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel. (401) 274-4400
Fax (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that I have filed the within Memorandum in Support of Motion to Quash via the ECF System and that it is available for viewing and downloading and that I have caused a copy to be sent to the Attorney of Record listed below on this 10th day of July, 2008.

/s/ *Rebecca Partington*

**Charles M Bradley**
bradley39@earthlink.net

# EXHIBIT A

# AFFIDAVIT

I, James O. Demers hereby state that I will be out of state on a family planned vacation from July 18th thru July 28th, 2008 in the State of Virginia. This vacation has been planned for the past five months and due to the amount of miles away, I will be unable to return to testify during this time.

James O. Demers
Lieutenant
Rhode Island State Police

In 2008 this 3rd day of July before me personally came James O. Demers and made oath to the truth of the foregoing.

Lori A Tellier
~~Judge of the District Court~~
~~Justice of the Supreme/Superior Court~~
Notary – commission expires 12/18/08

# EXHIBIT B

State of Rhode Island and Providence Plantations

DEPARTMENT OF ATTORNEY GENERAL
150 South Main Street • Providence, RI 02903
(401) 274-4400
TDD (401) 453-0410

*Patrick C. Lynch, Attorney General*

July 3, 2008

VIA FACSIMILE AND REGULAR MAIL

Michael Bradley, Esq.
39 Grove Avenue
Westerly, RI02891

Re: Jennings, et al. v. Pare, et al.

Dear Mr. Bradley,

Enclosed please find a check in the amount of $889.40, representing the payment of costs ordered by the First Circuit. Also enclosed is a second videotape of Dan Piccoli and Kevin Robishaw giving statements to the Simmons Commission. I became aware late yesterday that there might be some of Robishaw's testimony omitted from the one you received on Monday.

I also received copies of subpoenas yesterday for Darren Delaney, Elwood Johnson, William Laboissiere, Ken Bell, Michele Kershaw, James Demers, Kenneth Buonaiuto, Donald Devine and Staci Shepard. Please be advised that William Laboissiere has been retired from the State Police for several years.

Finally, all of the subpoenas require that these individuals all be present at the same date and time—July 22 at 9:30. Since it would be physically impossible for you to put them all on the stand at once, please give me some more definite estimates of when you plan to call them, so that appropriate staffing decisions can be made. I will need this information by the close of business on Wednesday, July 9. Please send that information directly to me—my fax number is 222-2995. Your most recent faxes have been going to another number on another floor in this building.

Sincerely,

Rebecca Partington

Rebecca Tedford Partington
Deputy Chief – Civil Division
Ext. 2303
Rpartington@riag.state.ri.us

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * *

PAULLA DOVE JENNINGS, ET AL., Plaintiffs,

VS.

STATE OF RHODE ISLAND, ET AL., Defendants.

* * * * * * * * * * * * * * * *

C.A. NO: 03-572T

MARCH 22, 2005

10:00 A.M.

PROVIDENCE, RI

BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF DISTRICT JUDGE

**(JURY TRIAL)**

APPEARANCES:

FOR THE PLAINTIFFS: Charles M. Bradley, Esquire
39 Grove Avenue
Westerly, Rhode Island 02891

FOR THE DEFENDANT: Rhode Island Attorney General's Office
By: Rebecca Partington, Esquire
by: Amy Vignali Coleman, Esquire
150 South Main Street
Providence, RI 02903

Court Reporter: Angela M. Reynolds, RPR-FCRR
One Exchange Terrace
Providence, RI 02903

seconds go by?

MS. PARTINGTON: Objection, your Honor.

THE COURT: From the point on that video or are you asking for his recollection?

MR. BRADLEY: Okay, I understand.

Q. Well, the only reason you know Wilfred Hill ever got up is because you saw it on the video; right?

A. Yes.

Q. At the point that you had been deposed and testified that you thought your arm was still under your body when your ankle broke, had you ever seen the State Police video yet?

MS. PARTINGTON: Objection, your Honor.

THE COURT: Overruled. You may answer.

A. No, I had not.

MR. BRADLEY: No further questions, your Honor.

THE COURT: We'll take our afternoon recess. Members of the jury may return to the jury room.

(Jury Not Present)

THE COURT: You may step down, Mr. Jennings.

(Witness Excused.)

THE COURT: Court will be in recess.

MR. BRADLEY: Your Honor, could I bother you with a piece of Court business? I have a question about -- we have a dispute over whether I can call a

witness, and Dr. Gross will be here tomorrow morning. As things presently stand for now though, the one witness besides Dr. Gross that I want to call was here this morning and he left, he was Wilfred -- Elwood Johnson who was the officer who really did instruct --

THE COURT: Please be seated everyone else.

MR. BRADLEY: There was testimony from Trooper Jones that he was ordered to essentially reconfigure his Use of Force Report at the instruction of Galindo. And I deposed Galindo and Galindo said he didn't know what he was talking about, didn't know what I was talking about, whatever, he hadn't done that.

Trooper Jones then testified at trial that it was another person name Elwood Johnson. I am attempting to subpoena him right now, he was in the courtroom this morning and I made an offer to call him today, and that offer was rejected. My point is that I would like to call him and I would like to have leave to call Dr. -- should I be standing -- to call Dr. Gross first thing in the morning.

THE COURT: Well, if he's not here, how can you call him?

MR. BRADLEY: Well, who, Dr. Gross?

THE COURT: No, Mr. Johnson?

MR. BRADLEY: Well, I won't be able to call him,

but hopefully he will be subpoenaed today, or even if I can't get him under subpoena under these unusual circumstances, I would like leave to call him later after I've rested.

THE COURT: For what purpose would you be calling him?

MR. BRADLEY: I would be calling him to investigate whether or not Trooper Jones, in fact, reported the force he exerted upon Adam Jennings in his Use of Force Report. My offer of proof would be that the Use of Force protocols by the Rhode Island State Police would have required him to have done so and that he did not.

THE COURT: Well, this trial isn't about whether Trooper Jones or anyone else followed correct procedures in filing the report. That may have some bearing on the accuracy of their testimony, I can understand that, but I'm still at a loss here to understand what it is you intend to ask Mr. Johnson.

MR. BRADLEY: I would be asking Mr. Johnson if, when Trooper Jones first submitted a Use of Force Report, he omitted something concerning what he did to Mr. Jennings that would have been required by the regulations, and I think it would be probative of the issue of whether Mr. Jones knew that he had done

something wrong --

THE COURT: I don't think the regulations have anything to do with this. It may be relevant as to whether Trooper Jones submitted an initial report that was different from the subsequent report, that may be relevant. But whether his initial report or subsequent report complied with State Police regulations, I don't really see what that has to do with the issues in this case.

MR. BRADLEY: I almost think it's analogous of evidence of someone fleeing from the site of a crime, Judge. If Trooper Jones was required by his training and by the regulations to admit to something that he failed to admit to, then I think it is probative of whether Trooper Jones understands that he had something to hide.

THE COURT: That's what I -- I thought I just finished saying that if you have some evidence that Trooper Jones submitted reports that say different things, that may be relevant. But I don't understand what your point is about the State Police regulations with respect to reports.

MR. BRADLEY: Well, your Honor, I'd make an offer and have the use of -- the protocols on Reporting Use of Force marked for identification and ask you to

examine it. We can do that -- I can tell you what they say. They say that you are supposed to report any use of force, you're supposed to report it before you go off duty, you are supposed to report any serious injury you have inflicted. And I think that this failure to report those things -- it's not a conflict, it's an omission. It's the type of thing that you would have expected Trooper Jones to have included in the report and he did not include it in his first report, he just tagged it on to his second report later, tried to explain it on the basis that he was ordered by this man, Johnson, to report every use of force in the separate report. And how can I prove that he didn't do this.

THE COURT: What do you have to say on this, Ms. Partington? We have another one of these tempest in a teapot, it seems to me, but what do you have to say on this?

MS. PARTINGTON: Your Honor, I have several things to say about Mr. Johnson. Number one, he was never on the plaintiff's witness list. Number two, he is being offered to, as far as I can tell, to impeach a witness.

THE COURT: How could he be on the plaintiff's witness list if his name was mentioned in Trooper

Jones's testimony in explaining why he filed two reports?

MS. PARTINGTON: Perhaps -- well, the discovery was done, I don't know how he could be --

THE COURT: What's your second point?

MS. PARTINGTON: My second point, the second point is we have been through this. There is testimony on the record. The witness statement was done first. It mentions Adam Jennings. The other two statements, one does, one doesn't. He got plenty of testimony from Trooper Jones about every document that he filed and what they said. That's already on the record. And the third, the case is not about the paperwork as I argued initially, as I stated to the jury in the opening of the case, isn't about paperwork.

THE COURT: Mr. Bradley, my recollection is this, and you tell me if you have a different recollection. My recollection is that Trooper Jones's testimony was that he filed an initial report about this incident, and by incident I wasn't exactly clear, but I understood him to mean everything that happened at the Smoke Shop and the exterior that day. That after he filed the report, he was told by Mr. Johnson that he had to file a separate report dealing with Mr. Jennings, because there was use of force involved

there and he had to put that into a separate report. And that's why he filed a separate report. Now, do you have reason to believe otherwise?

MR. BRADLEY: Yes, your Honor.

THE COURT: You do, okay. What is your belief?

MR. BRADLEY: My belief is that he testified in deposition and he testified in this courtroom, not that he was ordered to put a separate report in restricted to Adam Jennings. And by the way, if he ever was ordered to file a report that was restricted only to Adam Jennings, he didn't do it, I have not been provided with a report that is devoted solely to Adam Jennings, that is problem number one.

My recollection of his testimony in his deposition and in the courtroom was that he was ordered to provide a separate Use Of Force Report for every use of force incident. But even if what he testified to in this courtroom was that he was ordered to do a separate Use Of Force Report for Adam Jennings, that report does not exist.

THE COURT: What's the other exhibit that was initially, I think it was Exhibit 5 --

MR. BRADLEY: We have 5A, B and C. And 5A and B were his Use of Force Reports. And C was his witness statement.

THE COURT: Was Mr. Johnson in the courtroom earlier this morning, Ms. Partington?

MS. PARTINGTON: Yes, your Honor.

THE COURT: And did Mr. Bradley indicate that he wanted to call him as a witness this afternoon?

MS. PARTINGTON: Yes, your Honor. Well, he indicated he wanted to call him as a witness right then.

THE COURT: Was Mr. Johnson instructed not to come back here this afternoon?

MS. PARTINGTON: No, he was not.

THE COURT: Why isn't he back here?

MS. PARTINGTON: I have no idea.

THE COURT: Well, I think we can only approach this -- this means that you have nothing else to present this afternoon, that we end early today?

MR. BRADLEY: Well, I am done for today, Judge. I have no other witnesses to call.

THE COURT: I trust we won't have another repetition of this?

MR. BRADLEY: It can't happen with me because I only have one more witness.

THE COURT: What you can do is get a transcript from the court reporter as to the part of Trooper Jones's testimony in which he explains this incident

that you and I seem to have different memories of.

You'll have Mr. Johnson here tomorrow, Mr. Partington, and if it turns out that Mr. Bradley's recollection is correct, then we can have Mr. Johnson testify tomorrow, and if it turns out that Mr. Bradley's recollection is incorrect, then Mr. Johnson won't testify and you can request sanctions if it's appropriate based on what the transcript shows.

MS. PARTINGTON: Thank you, your Honor.

THE COURT: Now, you'll have the doctor here tomorrow morning?

MR. BRADLEY: Ten o'clock.

THE COURT: And, Ms. Partington, will you have your witness, I guess most of your witnesses are already here in the courtroom, you will be prepared to proceed when Mr. Bradley finishes?

MS. PARTINGTON: Yes, your Honor.

THE COURT: And Mr. Bradley, you will have a tape tomorrow of only that portion of this tape that you have been playing over and over?

MR. BRADLEY: Yes.

THE COURT: Is there anything else we need to talk about before we adjourn for the day?

MR. BRADLEY: Not from the plaintiff, your Honor.

111

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| PAULLA DOVE JENNINGS, ET AL., | * | C.A. NO: 03-572T |
| Plaintiffs, | * | MARCH 23, 2005 |
| VS. | * | |
| STATE OF RHODE ISLAND, ET AL., | * | 10:00 A.M. |
| Defendants. | * | PROVIDENCE, RI |

* * * * * * * * * * * * * * * *

BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF DISTRICT JUDGE

**(JURY TRIAL)**

APPEARANCES:

FOR THE PLAINTIFFS: Charles M. Bradley, Esquire
39 Grove Avenue
Westerly, Rhode Island 02891

FOR THE DEFENDANT: Rhode Island Attorney General's Office
By: Rebecca Partington, Esquire
by: Amy Vignali Coleman, Esquire
150 South Main Street
Providence, RI 02903

COURT REPORTER: Angela M. Reynolds, RPR-FCRR
One Exchange Terrace
Providence, RI 02903

**23 MARCH 2005 - 10:00 A.M.**

THE COURT: Mr. Bradley, is it still your intention to attempt to call Inspector Johnson?

MR. BRADLEY: Yes, it is, your Honor.

THE COURT: I've reviewed the testimony of Trooper Jones with respect to the report here, reports in issue and the issue -- you may be seated, Mr. Bradley -- the issues in this case, at least the questions with respect to Trooper Jones's testimony are what did he say in the report or reports that he previously filed, were those things accurate, is there anything in those reports that's inconsistent with the testimony that he gave at trial. Those are the issues, and that may include an inquiry into why he filed two different reports.

He's testified as to why he did that and one of the things he said was that he was told by Inspector Johnson that he had to do it because there had to be separate reports with respect to each individual against whom force was used.

Now, certainly you might be able to call Inspector Johnson, Mr. Bradley, if you believe that Inspector Johnson is going to contradict that and say, no, I never told Trooper Jones that he had to file the second report. If that's what you expect his testimony

to be, you may call him for that purpose. But we're not going to get off on a tangent here as to whether either/or both of the reports that Trooper Johnson, rather, Trooper Jones filed, complied with whatever regulations the State Police may have regarding reports. It's just not relevant.

Trooper Jones is not on trial here for failing to comply with State Police regulations with respect to the filing of reports. So whether the report that he filed did or did not comply with those requirements is totally irrelevant to the issues in this case. It doesn't matter whether the report that he filed was filed two days or a week after the incident and the regulations require that they be filed one day after incident. It doesn't matter whether he filed his report in blue ink and the regulations say it has to be filed in black ink, it doesn't matter, none of these things matter.

The issues that matter are what he said, whether there was anything inconsistent between what he said in one report versus the other report, whether there is anything inconsistent between what he said in the reports and what he testified to at trial, whether the reports were accurate. Those are the issues, and that does not implicate the State Police regulation or

Inspector Johnson in any respect other than, as I said, if Inspector Johnson is going to tell us something different from what Trooper Jones told us about why he filed the two reports.

If we get into State Police regulations, we're going to get off on a tangent here where Ms. Partington then is going to be presenting evidence about what the regulations say, what the rest of the regulations say, the jury is going to become confused as to what the issues in the case are and we're just not going to do that. So if you expect that Inspector Johnson is going to say something different about the reason that two reports were filed, you may call him. If your purpose is to call him to explain what the regulations say about the form of reports, then it's a wild goose chase, there is no point in doing it.

MR. BRADLEY: May I be heard, your Honor?

THE COURT: You may.

MR. BRADLEY: I understand what you're saying and I understand that it's going to be a very fine line that I'm going to be asked to walk here, and I don't want to contravene what the Court's telling me. But just for my own clarification, am I going to be allowed to ask Trooper Johnson what it was about the first report that was defective, if, in fact, that's --

clearly what we have here, what's on the table is Trooper Jones was asked to do something again, and I am simply trying to find out what was deficient in the first report that caused it to be done again at the request of --

THE COURT: That gets into, again, the regulations. As I said, I don't know how I can make it any clearer. You can ask Inspector Johnson what instructions he gave to Trooper Jones about filing another report, what he told him about what he had to do in his other report. And I suppose part of that may be by necessary implication, I guess there was something about the first report that Inspector Johnson didn't think was sufficient for his purposes, I don't know. But the real issue, the only issue that I can see that involves Inspector Johnson is whether as Trooper Jones has testified, he told Trooper Jones file another report and in your -- you can also ask him what he told him to put in the second report or how he told him to write the second report, that's fine. But that's it.

MR. BRADLEY: Okay, I'll try to adhere to that.

THE COURT: So you still want to call Inspector Johnson, then?

MR. BRADLEY: I do, your Honor.

THE COURT: Is Inspector Johnson here today, Ms. Partington?

INSPECTOR JOHNSON: I am, your Honor.

THE COURT: Okay, all right.

Now, I think we've completed the previous witness when we ended yesterday; is that right?

MR. BRADLEY: Yes, your Honor.

THE COURT: Bring the jury in, please.

MS. PARTINGTON: Your Honor, just one quick thing. We have also -- Joseph Galindo is also in the courtroom, your Honor. If the plaintiff might intend to call him, he will stay. But if not, I would like to give him to leave to return to his job.

THE COURT: Why would you be calling Joseph Galindo?

MR. BRADLEY: Your Honor, I may call him depending on what happens with Trooper Johnson. I would be more than happy at the very first moment I know to say go ahead, but --

THE COURT: Well, my recollection is that Mr. Galindo was formerly a member of the State Police and initially Trooper -- or I guess in his deposition Trooper Johnson had said that it was Inspector Galindo that told him to file the second report, but he then realized that it was really Inspector Johnson?

MR. BRADLEY: Trooper Jones testified that it was Galindo who told him that he had to file a separate Use of Force Report devoted exclusively to the use of force on Adams Jennings.

THE COURT: But then he corrected that, we discovered that Inspector Galindo was no longer with the State Police at the time this happened; isn't that right?

MR. BRADLEY: No. The testimony was that Trooper Galindo was no longer a member of the Rhode Island State Police at the time that Trooper Jones identified him as the person who gave him the instruction. In other words, Galindo was working with the State Police at the time of the raid. At the time Trooper Jones says, he's the one that told me to do it, Galindo is no longer working for him. And somebody -- I'm not going -- my argument would be someone -- he would think I couldn't even get into the courtroom because he is no longer working for the police.

THE COURT: Mr. Galindo is excused, Ms. Partington, unless you wish to call him.

Bring the jury in, please.

(Jury Present)

THE COURT: Good morning, ladies and gentlemen.

Mr. Bradley, you may call your next witness.

MR. BRADLEY: Thank you, your Honor. Mr. Johnson, please.

**(PLAINTIFFS' WITNESS, ELWOOD M. JOHNSON, JR., SWORN)**

THE CLERK: State and spell your name for the record.

THE WITNESS: Elwood, I'll spell that for you as well, E-L-W-O-O-D, M., Johnson, J-O-H-N-S-O-N, Jr.

**DIRECT EXAMINATION**

**BY MR. BRADLEY:**

Q. Good morning, Mr. Johnson.
A. Good morning, Mr. Bradley.
Q. In July 2003, were you employed by the Rhode Island State Police?
A. I was, sir.
Q. And what was your job with them?
A. I was a Lieutenant, a Patrol Commander in charge of the Wickford Barracks.
Q. And did you have any role to play in what we have called the Smoke Shop raid?
A. I did not, sir.
Q. And did you have any role to play with respect to Trooper Jones' submission of Use of Force Reports?
A. At a later time, yes.
Q. Sometime after the raid?

A. Correct.
Q. When would that have been?
A. I became an Inspector in charge of the Professional Standards Unit, which is responsible for collecting and reviewing Use of Force incidents, in September of 2003.
Q. And Trooper Jones has identified you as the person who instructed him to submit a second Use of Force Report. Did you, in fact, tell him to do that?
A. That is incorrect. What I specifically did was I sent him an e-mail communication requesting Use of Force Reports for the two use of force incidents that I was aware that he was involved in at the Smoke Shop raid. And that's what I received, two reports simultaneously.
Q. Trooper Jones has explained the necessity of writing two Use of Force Reports -- well, have you reviewed the two Use of Force Reports that Trooper Jones wrote?
A. Yes, sir, I have.
Q. Are they identical?
A. No, they are not.
Q. How are they different?
A. One pertains solely to the arrest and use of force on Hiawatha Brown; the second report pertains to Hiawatha Brown and Adam Jennings, which were the two

separate incidents.
Q. And is the second report just tacking on a paragraph of the use of force on Adam Jennings?
A. I don't know how he prepared the report. I can only tell that you I was satisfied with the content of what he described, it was consistent with the videos that I had seen, and one covered Adam Jennings, the other covered Hiawatha Brown.
Q. Both covered Hiawatha Brown; right?
A. That's correct.
Q. And the only difference between the two reports is one of them also added on a paragraph about the use of force on Adam Jennings; isn't that true?
A. That is correct.
Q. Okay. So Trooper Jones testified that he was instructed by you to devote one Use of Force Report to one incident and devote the other Use of Force Report exclusively to Adam Jennings?
MS. COLEMAN: Your Honor, may I have the page of the deposition?
MR. BRADLEY: Well, of the transcript? Pages 12 and 13.
THE COURT: Well, let the jury decide what Trooper Jones testified to. If you have a question to pose to --

Are you still with the State Police, Inspector Johnson?

THE WITNESS: Yes, I am, your Honor.

THE COURT: You can pose whatever question you want to Inspector Johnson, but we'll let the jury decide what Trooper Jones did or didn't say.

MR. BRADLEY: Thank you, your Honor.

Q. Did Trooper Jones issue a Use of Force Report that was devoted exclusively to the use of force that he applied to Adam Jennings?

MS. COLEMAN: Objection, your Honor, asked and answered.

THE COURT: Overruled. You may answer.

A. When you say exclusively, was Adam Jennings the only name on that report; then the answer would be no. But it did cover the use of force upon Adam Jennings, which is what I asked for, a Use of Force Report for the use of force incident involving Adam Jennings and the use of force incident involving Hiawatha Brown.

MR. BRADLEY: No further questions.

**CROSS-EXAMINATION**

**BY MS. COLEMAN:**

Q. Good morning, Inspector Johnson.

A. Good morning, Ms. Coleman.

Q. Are you familiar with a witness statement that Ken

Jones prepared following the Smoke Shop raid?
A. Yes, I am.
Q. And when was that prepared?
A. I believe it was July 18, 2003.
Q. And did that contain a description of Adam Jennings' arrest in it?
A. That I recall it did, yes.
MS. COLEMAN: I don't have any further questions, your Honor.
THE COURT: Do you have redirect?
MR. BRADLEY: Just briefly.

**REDIRECT EXAMINATION**

**BY MR. BRADLEY:**

Q. You are aware of the date the witness statement was prepared?
A. Yes, I am.
Q. And you are not sure of the date of the two Use of Force Reports?
MS. COLEMAN: Objection, your Honor, scope.
THE COURT: Sustained.
MR. BRADLEY: No further questions.
THE COURT: You may step down, Inspector Johnson.
THE WITNESS: Thank you, your Honor.
MR. BRADLEY: Plaintiffs rest, your Honor.